**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**UNITED STATES OF AMERICA**

v.                                              **Criminal No. 1:22-cr-00094-HSO-BWR-1**

**MITCHELL WAYNE ROBINSON**

**REPORT AND RECOMMENDATION**

THIS MATTER is before the Court to determine whether Defendant Mitchell Wayne Robinson (Defendant) is competent to stand trial. After reviewing the psychological evaluation reports submitted to the Court and considering the testimony, evidence, and argument presented at the competency hearing conducted on December 14, 2023, the undersigned recommends finding that Defendant is incompetent to stand trial and ordering that Defendant be committed for examination and preparation of an 18 U.S.C. § 4246 report/certification.

I.     BACKGROUND

On July 19, 2022, Defendant was indicted as a felon in possession of a firearm that was in and affecting interstate and foreign commerce and for animal crushing of a non-human mammal. [17].

Psychologist Julie D. Teater, Psy. D. (Dr. Teater), conducted Defendant's first psychological evaluation on July 26, 2022. [34]. As part of this evaluation, Dr. Teater interviewed Defendant and conducted the Miller Forensic Assessment of Symptoms Test (M-Fast)[1] and the Fitness Interview Test. *Id.* at 1. Defendant

---

[1] This test is used "to look for somebody who may be feigning symptoms of psychosis or serious mental illness." Hr'g Tr. at 6-7.

1

described hallucinations and "paranoid delusions," thought that he communicated with others telepathically, and thought that he had special powers that he referred to as "auras." *Id.* at 3. Defendant understood that he had an attorney and knew his attorney's name. *Id.* at 4. Defendant could not recall his arrest, during which he was shot five times. *Id.* Dr. Teater reported that Defendant "had some appreciation of the severity of" his alleged crimes. *Id.* Defendant understood the meaning of an "oath" and "had a basic understanding of the judge, jury, and prosecutor's roles" in a criminal trial. *Id.* Defendant was unaware of possible penalties for his alleged offenses. *Id.*

In each interview, Defendant mentioned an individual named Anthony Ellis (Ellis). *Id.* at 3; [28] at 6; [30] at 9; [35] at 8; [36] at 3. Defendant claims that Ellis murdered his wife and children,[2] among others. [34] at 3.

Dr. Teater found that Defendant "demonstrated marked impairment" in his ability to communicate facts to his lawyer. *Id.* at 4. Dr. Teater opined that Defendant's psychosis "significantly impaired" his "capacity to plan legal strategy with his attorney and engage in his own defense." *Id.* These findings led Dr. Teater to conclude that Defendant was not "competent to enter a plea, stand trial, or be sentenced." *Id.* at 5. She also opined that Defendant's competence "could be restored with psychiatric intervention that includes medications for psychosis." *Id.*

On August 21, 2022, Defendant "suffered an 8-10 cm intracerebral hemorrhage that required an emergency craniotomy."[3] [35] at 7. On September 1,

---

[2] Both Defendant's wife and children are still alive. [34] at 3. "There is no information that Mr. Ellis is a real individual." [30-1] at 5.

2022, Defendant filed a Motion [23] for Competency Hearing and a Notice [24] of Insanity Defense. The Court granted Defendant's Motion [23] for Competency Hearing on September 20, 2022. Order [25].

Defendant's intracerebral hemorrhage changed Defendant's "mental status" and caused Defendant's attorney to request that Defendant be re-evaluated. [35] at 7. Dr. Teater re-evaluated Defendant on September 20, 2022. *Id.* Dr. Teater interviewed Defendant and conducted the Repeatable Battery for the Assessment of Neuropsychological Status, the Forensic Interview Test, and the M-Fast. *Id.*

Defendant's speech was slower and he occasionally "develop[ed] a blank stare." *Id.* Defendant did not know the date[4] and skipped two numbers while counting back from 10 to 1. *Id.* Defendant exhibited lapses in memory and losses to part of his visual field. *Id.* Defendant recalled neither his arrest nor his attorney's name and had trouble appreciating the nature of the charges against him. *Id.* at 8. Defendant had difficulty understanding the role of police in society and had less understanding of the role of the key participants in a criminal trial as compared to before his injury. *See id.* Defendant continued to express the belief that he could communicate with others telepathically. *Id.* at 9. All of this led Dr. Teater to find that Defendant's "capacity to plan legal strategy with his attorney and engage in his own defense is significantly impaired." *Id.* Thus, Dr. Teater again concluded that

---

[3] "The area that he had his bleed was the left parietal area of the brain, and that subpart is responsible for reading comprehension as well as oral comprehension, motor activities and balance, being able to track something, visual spatially." Hr'g Tr. at 8-9.
[4] Defendant did know the date during his first evaluation. [34] at 3.

3

Defendant was incompetent to stand trial. *Id.* at 9-10. Dr. Teater further stated that she thought Defendant "cannot be restored." *Id.* at 10.

Pursuant to the Court's Order [25] granting Defendant's Motion [23] for Competency Hearing, Defendant was committed to the custody of the Attorney General and placed in Federal Medical Center Devens (FMC Devens) on January 26, 2023. Order [25]; [28]. Psychologists Paige Voehringer, Psy. D. (Dr. Voehringer), and Diana Schoeller Hamilton, Psy. D. (Dr. Hamilton), assessed Defendant's competency to stand trial and determined that Defendant was incompetent to stand trial as of March 8, 2023. [28] at 5-10. The Voehringer and Hamilton report incorporates FMC Devens staff observations. *Id.* at 1. Drs. Voehringer and Hamilton also interviewed Defendant. *Id.* at 6.

Drs. Voehringer and Hamilton diagnosed Defendant with schizophrenia.[5] *Id.* at 7. Drs. Voehringer and Hamilton conducted the Montreal Cognitive Assessment (MOCA). *Id.* at 6. Defendant's "performance was indicative of moderate cognitive impairment." *Id.* During Defendant's interview, "he frequently derailed the conversation to discuss Anthony Ellis, telecommunication, auras, and serial killers. He required frequent redirection." *Id.* at 7. Defendant needed to be reminded about the "specific title of his charges" and expressed "confusion about the specifics of his federal charges." *Id.* Defendant believed that the Court had "six to seven trials to find [him] guilty before the charges are dropped, and [that] after 18 months, he would be allowed to leave." *Id.* at 8. Defendant generally understood the pleas of "guilty" and "not guilty." *Id.* Defendant understood the role of his attorney, the

---

[5] Dr. Teater did not make this diagnosis in her earlier evaluations. [34]; [35].

4

prosecutor, the judge, and the jury in criminal trials. *See id.* Defendant stated his belief that "the Dixie Mafia 'makes judges disappear.'" *Id.* Defendant reported a good relationship with his attorney and could identify her by name. *Id.* Defendant repeatedly referenced his ability to telecommunicate with others. *Id.* at 8-9.

Drs. Voehringer and Hamilton opined that Defendant's "delusional beliefs substantially impact his understanding of his case, his ability to work with his attorney, and his ability to make rational decisions pertaining to his case." *Id.* at 9. Drs. Voehringer and Hamilton ultimately recommended that Defendant undergo treatment for competency restoration. *Id.* at 10-11; Ex. [28-1].

The Court then ordered that Defendant remain in the custody of the Attorney General at FMC Devens and that FMC Devens produce a new report on Defendant's mental condition within four months of April 14, 2023. Order [29]. On August 14, 2023, Miriam Kissin, Psy. D. (Dr. Kissin), produced a Forensic Report re-assessing Defendant's competency to stand trial. [30] at 3-14. This report incorporated staff observations since Defendant's arrival at FMC Devens and interview observations. *Id.* at 4, 9. While at FMC Devens, Defendant took Depakote Extended Release to treat seizures and Risperdal, an antipsychotic medication, to treat his schizophrenia. *Id.* at 9. Dr. Kissin diagnosed Defendant with schizophrenia. *Id.* at 10. Defendant still discussed his ability to "telecommunicate." *Id.* at 9. His memory problems improved but Defendant still "evidenced occasional word finding problems and needed to recollect his place in conversations." *Id.* Defendant could articulate the charges against him and knew the potential sentence he faced for each charge.

*Id.* at 11. He could explain the pleas of "guilty" and "not guilty" and generally understood the roles of key trial participants. *Id.* at 11-12. Defendant recognized his attorney's name. *Id.* at 12. Defendant understood the evidence against him. *Id.* at 12-13. Defendant acknowledged that he would likely face a larger sentence if found guilty at trial as compared to if he accepted a plea deal. *Id.* at 13.

Unlike the previous three reports, Dr. Kissin thought Defendant "does not exhibit symptoms of a serious mental illness that presently precludes his ability to understand the nature and consequences of the proceedings against him or to properly assist in his defense." *Id.* at 14. She also found that Defendant:

> manifested symptoms of a severe mental disorder, namely Schizophrenia, which rendered him unable to appreciate the nature and quality or the wrongfulness of his acts in regard to the charge of felon in possession of a firearm. Regarding the charge of animal crushing, it is the opinion of the undersigned that at the time of the instant offense, [Defendant's] psychiatric symptoms did not serve to render him unable to appreciate the nature and quality or the wrongfulness of his acts.

Ex. [30-1] at 6. Dr. Kissin reasoned that Defendant's antipsychotic medication improved his "competency-related skills" regardless of Defendant's delusional beliefs. [30] at 14. Dr. Kissin thought that Defendant had a better "understanding of his charges and the possible consequences" and the facts surrounding his arrest compared to previous evaluations. *Id.* Defendant appeared less fixated on his delusions. *Id.*

On September 1, 2023, the acting warden at FMC Devens ultimately signed a "certificate of competency" certifying that "[p]ursuant to 18 USC 4241(e) . . . [FMC Devens] staff determined [Defendant] is able to understand the nature and

6

consequences of the proceedings against him and to assist properly in the defense of the claims brought against him." *Id.* at 1-2.

Dr. Teater performed the most recent evaluation of Defendant on November 28, 2023. [36]. Defendant "was oriented to place, and person (where he was, and who he was)" but gave an incorrect month and year when asked. *Id.* at 2. "When questioned about prior delusions and hallucinations, he kept saying 'I can't talk about that now.'" *Id.* Defendant incorrectly stated that he last saw his attorney three months ago when he had seen her about two weeks prior. *Id.* Defendant continued to describe his ability to communicate with others telepathically. *Id.* at 5. He had little memory of his arrest. *Id.* Defendant exhibited an understanding of what an oath is and a "basic understanding" of the role of the judge, jury, and prosecution in a criminal trial. *Id.* Defendant incorrectly believed that he did not face other charges related to his federal offenses. *Id.* Defendant mentioned the "Dixie Mafia" and his belief that they influence what happens in court. *Id.* Defendant also stated that the Dixie Mafia has no control over court. *Id.* Although Defendant knows the possible sentences he faces for each federal charge, Defendant believes that if he goes to court, "he will receive probation and be released." *Id.* at 6. Defendant "had significant problems staying on topic throughout the interview." *Id.*

Dr. Teater disagreed with Dr. Kissin's conclusion that Defendant's cognitive impairment was "resolved."[6] *Id.* at 7; [30] at 9. In Dr. Teater's opinion, Defendant

---

[6] Dr. Teater testified that "[i]n the [Kissin] report, they make a point of saying that it -- his cerebral bleed had resolved. The actual bleed had resolved. He was no longer actively bleeding in his brain, but that's totally separate from the cognitive [impairment issue]. And I couldn't find where it was

7

"shows impaired in immediate memory, delayed memory, attention, and language,"[7] and, to Dr. Teater, both "[i]mmediate memory and attention are necessary components of an individual being able to assist counsel and testify." [36] at 7.

Dr. Teater observed that Defendant's "capacity to plan legal strategy with his attorney and engage in his own defense is significantly impaired by his psychosis and cognitive impairment." *Id.* at 6. Dr. Teater further stated that Defendant

> lacks the capacity to assist in his own defense due to active symptoms of a mental illness and cognitive impairment. He is not able to provide consistent, rational, and relevant information about the alleged crime and his behavior. His ability to understand and cooperate with [his attorney] in planning a strategy for the defense that is consistent with the reality of his circumstances is impaired.

*Id.* at 7. Dr. Teater posited that "it is not likely [Defendant] will have substantial improvement or abatement in symptoms of schizophrenia nor his cognitive impairment." *Id.* at 8. Dr. Teater concluded that Defendant "does not appear competent to enter a plea, stand trial, or be sentenced at this time." *Id.*

On December 14, 2023, the Court held a competency hearing. At that hearing, Defendant called Dr. Teater to testify. During the September 20, 2022 evaluation, Dr. Teater testified that Defendant lost the ability to read and tested in the "severely impaired range" for his cognitive functioning. Hr'g Tr. at 8-9.

---

even addressed after that, nor even diagnosed even though their own instrument showed him impaired." Hr'g Tr. at 11.

[7] Dr. Teater testified that Defendant "had severe impairment in his immediate memory, which is when I say something, I was doing a task with him, and within a couple, probably 30 seconds to a minute would ask him to recall information, and it was grossly impaired. He was not able to adequately perform that task at all. And then we go and measure visual spatially how well can he . . . draw something he has seen, and that also showed significant impairment. And then his longer term memory, which is after five minutes to fifteen minutes, he could recall from that information that he was presented multiple times in the beginning, and that was grossly impaired still." Hr'g Tr. at 13.

Defendant "was experiencing . . . word finding problems where his brain was not making a connection. At other times, he may use a word incorrectly and didn't realize he was using a word incorrectly." *Id.* at 9. Dr. Teater testified that she had to constantly repeat information and re-direct Defendant during the September 20, 2022 evaluation. *Id.* at 9, 12. After Defendant's intracerebral hemorrhage, Dr. Teater diagnosed him with a major neurocognitive disorder.[8] *Id.* at 10. When asked about potential trial witnesses, Dr. Teater testified that Defendant responded by listing "people that we don't believe are real." *Id.* at 21.

Dr. Teater explained that Defendant's current memory and ability to pay attention are "markedly impaired." *Id.* at 13-14. Dr. Teater thought that Defendant's medication only "somewhat" helped with his delusions. *Id.* at 10-11. Dr. Teater stated that there is no medication for Defendant's brain injury. *Id.* at 11. Dr. Teater noted that the only neurocognitive testing conducted on Defendant at FMC Devens was the MOCA. *Id.* Dr. Teater commented that the MOCA "is a very brief assessment" that "is not intended for the purpose of . . . how [FMC Devens was] using it." *Id.* Dr. Teater would have expected FMC Devens to conduct "a full neuropsychological evaluation" following Defendant's MOCA results, but no one at FMC Devens did. *Id.*

The Court asked Dr. Teater questions about Defendant. *Id.* at 15-21, 23. Dr. Teater stated that she does not believe Defendant understands the potential benefits of plea bargaining because he did not understand what would happen after

---

[8] "A Major Neurocognitive Disorder is defined as a significant cognitive decline from a previous level of performance in one or more cognitive domains (complex attention, executive functioning, learning and memory, language, perceptual-motor, or social cognition)." [36] at 7.

9

he entered a plea deal. *Id.* at 16-17. Dr. Teater explained that Defendant "perseverates," meaning that he would repeatedly ask the same question after someone answered that question for him. *Id.* at 19. Dr. Teater found that there was no evidence of "feigning or exaggerating" symptoms.[9] *Id.* at 19-20. Dr. Teater spoke with Defendant on December 14, 2023 before testifying and stated that that conversation did not change her opinion on Defendant's competence. *Id.* at 20-21. Dr. Teater does not think continued medication will alter her opinions. *Id.* at 23.

Defendant did not testify at his competency hearing.

## II.   DISCUSSION

Where, as here, a defendant has been hospitalized for the purpose of restoring competency, the action becomes subject to 18 U.S.C. § 4241(d), which provides that "[i]f, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248." The period of commitment has ended. The undersigned recommends finding that Defendant is still not competent to stand trial.

> To be deemed competent, the defendant must have the present ability to consult with his lawyer with a reasonable degree of rational understanding and have a rational as well as factual understanding of the proceedings against him. A district court can consider several factors in evaluating competency, including, but not limited to, its own observations of the defendant's demeanor and behavior; medical testimony; and the observations of other individuals that have interacted with the defendant.

---

[9] If anything, Dr. Teater thought Defendant may have been minimizing symptoms during the November 28, 2023 evaluation. Hr'g Tr. at 20.

10

*United States v. Simpson*, 645 F.3d 300, 306 (5th Cir. 2011) (internal citations, alterations, and quotation marks omitted).

At Defendant's competency hearing, he appeared to be staring off into the distance and did not appear to appreciate the nature of the ongoing Court proceedings concerning his competence. Otherwise, Defendant sat at the defense table and behaved properly.

The medical testimony is conflicting. While Dr. Kissin found Defendant was competent to stand trial on the animal crushing charge, Dr. Teater found that Defendant was not competent to stand trial. [30] at 14; [36] at 7-8. Both Drs. Kissin and Teater agree that Defendant's schizophrenia impairs his ability to stand trial. [30] at 14; [36] at 7-8. Dr. Teater diagnosed Defendant with a major neurocognitive disorder where Dr. Kissin did not. [36] at 7. Dr. Teater finds Defendant to be more cognitively impaired than Dr. Kissin does. *See id.*; [30] at 13-14.

The main point of disagreement between Dr. Kissin and Dr. Teater is over the extent to which Defendant can assist his attorney.

Dr. Teater's November 28, 2023 report and her testimony, both consistent with Drs. Voehringer and Hamilton's March 8, 2023 report and Dr. Teater's earlier reports, cast doubt on whether Defendant can meaningfully consult with his lawyer. [28]; [34]; [35]; [36]; Hr'g Tr. Although Defendant may have a general understanding of court proceedings and the trial process, his schizophrenia and cognitive impairment hinder his ability to understand how he fits into that process and his ability to help his lawyer defend him. [36] at 5-8. Defendant's failure to

11

grasp the potential benefits of plea bargaining, delusions, and general mental impairments demonstrate this. *Id.*; Hr'g Tr. at 16-17. Defendant's delusions impair his understanding of reality. His memory and focus issues impair his ability to consult with his lawyer to devise a trial strategy. Dr. Teater's testimony also shows that the FMC Devens Psychologists may not have adequately tested, or accounted for, Defendant's cognitive impairments. Hr'g Tr. at 11.

Because Dr. Teater has more experience with Defendant and has support in the opinions of Drs. Voehringer and Hamilton, the undersigned agrees with her opinions on Defendant's competence. Dr. Teater appeared to be a credible witness. Her conclusion regarding Defendant's competence comports with each report detailed above and the undersigned's observations.[10] It should also be noted that the United States did not cross-examine Dr. Teater, present testimony, or argue against the notion that Defendant is incompetent.

The Court finds that, since being committed to the custody of the Attorney General, "defendant's mental condition has not so improved as to permit the proceedings to go forward." [36] at 7-8; Hr'g Tr. Accordingly, Defendant is subject to the provisions of 18 U.S.C. § 4246.[11] 18 U.S.C. § 4241(d) ("If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248."). § 4246 states:

---

[10] Even if Dr. Kissin reached a different conclusion, the undersigned finds that the details of her report still support Dr. Teater's conclusion.
[11] 18 U.S.C. § 4248 deals with commitment of a sexually dangerous person and is of no relevance here where there is no indication that Defendant is sexually dangerous.

(a) **Institution of proceeding**.--If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined. . . . The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. . . .

(b) **Psychiatric or psychological examination and report.**--Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

18 U.S.C. § 4246(a)-(b).

"[T]he director's certification [is] a necessary prerequisite to a dangerousness hearing; without the certification, a court ordinarily lacks statutory authority to conduct the hearing." *United States v. Bonin*, 541 F.3d 399, 401 (5th Cir. 2008). And in *United States v. Houston*, the United States District Court for the Northern District of Mississippi held that 18 U.S.C. § 4247(b) "authorizes 'a reasonable commitment period . . . for examination and preparation of [the] initial § 4246 report/certification.'" No. 4:15-cr-88-DMB-JMV, 2017 WL 2625324, at *3 (N.D. Miss. June 16, 2017) (quoting *United States v. Colvin*, No. 5:15-cr-211-LWF, 2017 WL 432791, at *2 (E.D.N.C. Jan. 31, 2017)). The undersigned agrees with this holding. Because Defendant's mental condition has not improved, this Court will recommend

13

that Defendant be committed for examination and preparation of a § 4246 report/certification. 18 U.S.C. § 4241(d).

### III. RECOMMENDATION

For the reasons stated above, the undersigned United States Magistrate Judge recommends:

1. Ordering that Defendant be committed for purposes of examination and preparation of a § 4246 report/certification at an appropriate facility designated by the Federal Bureau of Prisons.

2. Pursuant to 18 U.S.C. § 4247(c), a psychological report shall be prepared and filed with the Court, with copies provided to counsel for the person examined and counsel for the government, and shall include:

    a. the defendant's history and present symptoms;

    b. a description of the psychiatric, psychological, and medical tests employed and their results;

    c. the examiner's finding from each test applied; and

    d. the examiner's opinions as to diagnosis and prognosis, including:

        i. whether the defendant is suffering from a mental disease or defect, as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.

3. The time from Defendant's competency hearing until such time the issue of the defendant's dangerousness are fully resolved by the Court be hereby excluded under the Speedy Trial Act, 18 U.S.C. §§ 3161(h)(1)(A) and 3161(h)(7).

## IV. NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Local Uniform Civil Rule 72(a)(3),

After service of a copy of the magistrate judge's report and recommendations, each party has fourteen days to serve and file written objections to the report and recommendations. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned district judge. Within seven days of service of the objection, the opposing party or parties must either serve and file a response or notify the district judge that they do not intend to respond to the objection.

L.U. CIV. R. 72(a)(3); *see* 28 U.S.C. § 636(b)(1).

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects. The District Judge need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion adopted by the Court to which he did not object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

**SIGNED,** this the 7th day of March, 2024.

*s/* *Bradley W. Rath*
BRADLEY W. RATH
UNITED STATES MAGISTRATE JUDGE