**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| | § | |
| **v.** | § | **No. 1:22-cr-94-HSO-BWR-1** |
| | § | |
| | § | |
| **MITCHELL WAYNE ROBINSON** | § | |
| | § | |

**ORDER ADOPTING MAGISTRATE JUDGE'S [37] REPORT AND
RECOMMENDATION, FINDING THAT DEFENDANT IS INCOMPETENT
TO STAND TRIAL, AND ORDERING THAT DEFENDANT BE COMMITTED
FOR EXAMINATION AND PREPARATION OF AN 18 U.S.C. § 4246
REPORT/CERTIFICATION**

This matter comes before the Court on the Report and Recommendation [37]

of United States Magistrate Judge Bradley W. Rath, entered in this case on March

7, 2024.   Neither party has objected to the Report and Recommendation [37], and

the time for doing so has passed.   After due consideration of the Magistrate Judge's

Report and Recommendation [37], the record, and relevant legal authority, the

Court finds that the Magistrate Judge's Report and Recommendation [37] should be

adopted, that Defendant Mitchell Wayne Robinson is incompetent to stand trial,

and that he should be committed for examination and preparation of an 18 U.S.C.

§ 4246 report/certification.

## I. BACKGROUND

Defendant Mitchell Wayne Robinson ("Defendant" or "Robinson") was

indicted on one count of being a felon in possession of a firearm under 18 U.S.C.

§ 922(g)(1) and one count of animal crushing under 18 U.S.C. § 48(a)(1).

Indictment [17].   On June 23, 2022, Jackson County Sheriff's Office deputies responded to a shooting in Moss Point, Mississippi, and found a man named Chris Joiner shot in the head.   Ex. [30-1] at 2 (under seal).   Defendant was identified as the suspect.   *Id.*   Officers used a police K-9 to assist with their search for Defendant, and as the K-9 approached him in the woods, he shot it twice, after which officers shot him.   *Id.*   Defendant told FBI agents in an interview conducted on June 27, 2022, that a man named Anthony Ellis—who, as discussed *infra*, evidently does not exist, but who Defendant imagines is a serial killer who murdered his family and uses telepathy—shot Joiner before handing him the H&R Model 935 .38 caliber revolver that police found the night they arrested him.   *Id.* at 3.

On July 26, 2022, Psychologist Julie D. Teater, Psy. D. ("Dr. Teater"), conducted Defendant's first psychological evaluation.   Ex. [35] (under seal).   Dr. Teater conducted a three-hour clinical interview, performed the Miller Forensic Assessment of Symptoms Test, performed a Fitness Interview Test, reviewed a 2016 Civil Commitment Application filed by Defendant's wife, and reviewed Singing River Hospital Records from 2011–2016 and 2021–2022.   *Id.* at 2.

During his interview, Defendant "reported his wife and children were murdered," yet it "was [later] discovered that they are residing in Alabama."   *Id.* at 3.   He was convinced a man named Anthony Ellis murdered his family and communicated with him telepathically.   *Id.* at 4.   Defendant's medical records indicate he had similar delusions in 2016 when his wife filed for his civil

commitment, and he reported feeling better after being put on medication.   *Id.*
When Dr. Teater asked "about his ability to communicate facts to his lawyer,"
Defendant "demonstrated marked impairment," reporting that "[h]e believes he has
been communicat[ing] with his attorney telepathically," and that "the judge and
prosecutor are able to hear everyone's thoughts."   *Id.* at 5.   Dr. Teater concluded:

> Mr. Robinson's capacity to plan legal strategy with his attorney and
> engage in his own defense is significantly impaired by his psychosis.
> His behavior and thought processes are being impacted by his
> hallucinations and delusions.   He is not accepting of the possibility that
> he is experiencing a mental health issue.

*Id.*   Defendant moved for a competency hearing on September 1, 2022, Mot. [23],
which the Court granted on September 20, 2022, Order [25].

Dr. Teater re-evaluated Defendant on September 20, 2022, after he "suffered
an 8-10 cm intracerebral hemorrhage that required an emergency craniotomy."
Ex. [35] at 7 (under seal).   During that interview, "[h]is speech was noted to be
slowed," he "would develop a blank stare at times and stop responding," he told Dr.
Teater that the current year was 7077, and he could not count backwards from 10 to
1.   *Id.*   Nursing staff informed Dr. Teater that Defendant "continued to have
similar delusions about an 'Anthony' harming others and possibly having a plan to
hurt a nurse at the jail," and "that others communicate with him through
telepathy."   *Id.* at 8.   Dr. Teater noted that Defendant "did not endorse symptoms
suggestive of malingering of psychotic symptoms," and concluded that he lacked
"the ability to interact with his attorney in a meaningful manner due to his
cognitive impairment, delusions and hallucinations."   *Id.* at 9–10.   Dr. Teater

further concluded that, given "his large intracerebral hemorrhage and his psychosis,

. . . [Defendant] cannot be restored" to competency.   *Id.*

Pursuant to the Order [25] granting Defendant's Motion [23] for Competency

Hearing, Defendant was committed to the custody of the Attorney General and

placed in Federal Medical Center Devens ("FMC Devens") on January 26, 2023.

Order [25]; Ex. [28] (under seal).   Psychologists Paige Voehringer, Psy. D. ("Dr.

Voehringer"), and Diana Schoeller Hamilton, Psy. D. ("Dr. Hamilton"), evaluated

Defendant's competency to stand trial in a report dated March 8, 2023, and

concluded that he was not competent to stand trial.   Ex. [28] at 5–10 (under seal).

They found he "meet[s] the criteria for schizophrenia" and experiences "delusions of

grandeur and paranoid delusions."   *Id.* at 7.   Defendant told Dr. Hamilton and Dr.

Voehringer that he expected to receive a sentence of probation, though he

understood the statutory maximums for the counts in his indictment.   *Id.* at 9.

Concerning testifying at a potential trial, he stated that "he and his attorney might

need to buy time if the telecommunication was impacted somehow, and they needed

time to straighten the communication."   *Id.*   He also reiterated that he was

communicating with law enforcement officers in an attempt to inform them of

Ellis's whereabouts on the night of his arrest.   *Id.*

The Court ordered that Defendant remain in the custody of the Attorney

General at FMC Devens and that FMC Devens produce a new report on Defendant's

mental condition within four months of April 14, 2023.   Order [29].   On August 14,

2023, Miriam Kissin, Psy. D. ("Dr. Kissin"), produced a Forensic Report re-

evaluating Defendant's competency to stand trial.   Ex. [30] at 3–14 (under seal).

Dr. Kissin agreed with Dr. Hamilton and Dr. Voehringer that Defendant had

schizophrenia that caused delusions of grandeur, *id.* at 9–10, but given his

understanding of plea bargaining, the roles of judges, juries, and prosecutors, and

that he was "far less fixated on" his delusional beliefs "than during his previous

interviews" after participating in a competency restoration program[1]  and taking an

anti-psychotic medication, concluded that he was competent to stand trial, *id.* at

13–14.

In response to Dr. Kissin's report, Defendant retained Dr. Teater to re-

evaluate him, Mot. [32] at 2; she did so on November 28, 2023, Ex. [36] at 2 (under

seal).   She noted that Defendant "continues to talk about Anthony Ellis, who he

believes is a serial killer," "still appears to have the belief that he communicates

with others through telepathy," and experiences "'brain farts' and 'drifts' in his

thoughts," which Dr. Teater noted may be caused by seizure activity, cognitive

issues, hallucinations, or a combination of these conditions.   *Id.* at 3.   She

explained how he "has had the delusion that he was able to speak with [Defense

---

[1] The report describes the competency restoration treatment as follows:

> This process included regular staff observation and formal interviews with evaluators.
> Additionally, the competency restoration process involved his participation in regular
> treatment team meetings with psychology and psychiatry staff in order to address
> restoration objectives.   Treatment goals typically include medication management (if
> recommended) and participation in psychoeducational competency restoration groups.
> Competency restoration groups are designed to present information to pretrial inmates
> in an effort to prepare them to return to court.   Topics include the following: a) an
> overview of the legal system; b) introducing and describing courtroom personnel; c)
> working with your attorney; d) role of the defendant; e) basic legal vocabulary; f) trial
> process; and g) rational decision-making.

Ex. [30] at 11 (under seal).

Counsel], the judge, and others through telepathy," and "[w]hen asked if he still

believes this, [he] said that 'stuff is for jobs.'"   *Id.* at 5.   "He then said, 'I have to be

okay so I can go to court.'"   *Id.*   He also "talked about the Dixie Mafia showing up

at the judge's doorsteps and influencing the courtroom and judgment," though he

"then said the Dixie Mafia has no control over this court."   *Id.*   In discussing

Defendant's ability to communicate with his lawyer, "[h]e said part of his brain is

missing and he can't remember" facts surrounding the incident, and "he only has a

'glimpse of past events.'"   *Id.* at 6.   Regarding his capacity to testify, "[h]e would

start to answer questions but then begin talking about Anthony Ellis."   *Id.*

      Dr. Teater concluded that Defendant "is not able to rationally communicate

with his attorney and assist in his defense or have the ability to testify in his

defense."   *Id.* at 7.   He "meets diagnostic criteria for Unspecified Schizophrenia

Spectrum and Other Psychotic Disorder," and he "meets the criteria for a Major

Neurocognitive Disorder," which is "defined as a significant cognitive decline from a

previous level of performance in one or more cognitive domains (complex attention,

executive functioning, learning and memory, language, perceptual-motor, or social

cognition)."   *Id.*   Accordingly, "[w]hile Mr. Robinson is able to identify the nature

of the charges and the roles of the participants in the proceedings, he lacks the

capacity to assist in his own defense due to active symptoms of a mental illness and

cognitive impairment."   *Id.*

      The Court held a competency hearing on December 14, 2023.   Minute Entry,

December 14, 2023.   At that hearing, Defendant called Dr. Teater to testify.   R. &

R. [37] at 8.   She discussed her observations and conclusions from her assessments of Defendant, including how "Defendant's current memory and ability to pay attention are 'markedly impaired'" due to his neurocognitive disorder, and "Defendant's schizophrenia impairs his ability to stand trial."   *Id.* at 9, 11.   Dr. Teater also testified that Dr. Kissin and the team at FMC Devens did not perform "a full neuropsychological evaluation" of Defendant, which she thought would be necessary to assess the effect of his neurocognitive disorder on his competency.   *Id.* at 9.

On March 7, 2024, United States Magistrate Judge Bradley W. Rath entered a Report and Recommendation [37] finding that Defendant is not competent to stand trial, thus subjecting him to the provisions of 18 U.S.C. § 4246.   *Id.* at 12. The Magistrate Judge likewise recommended "that Defendant be committed for examination and preparation of a § 4246 report/certification."   *Id.* at 14 (citing 18 U.S.C. § 4241(d)).   Given the procedures set forth in § 4246, the Magistrate Judge recommended:

1. Ordering that Defendant be committed for purposes of examination and preparation of a § 4246 report/certification at an appropriate facility designated by the Federal Bureau of Prisons.
2. Pursuant to 18 U.S.C. § 4247(c), a psychological report shall be prepared and filed with the Court, with copies provided to counsel for the person examined and counsel for the government, and shall include:
   a. the defendant's history and present symptoms;
   b. a description of the psychiatric, psychological, and medical tests employed and their results;
   c. the examiner's finding from each test applied; and
   d. the examiner's opinions as to diagnosis and prognosis, including:
      i. whether the defendant is suffering from a mental disease or defect, as a result of which his release would create a

7

       substantial risk of bodily injury to another person or serious
       damage to property of another.

3. The time from Defendant's competency hearing until such time the issue of
the defendant's dangerousness are fully resolved by the Court be hereby
excluded under the Speedy Trial Act, 18 U.S.C. §§ 3161(h)(1)(A) and
3161(h)(7).

*Id.* at 14–15.

Neither party has filed any objection to the Report and Recommendation [37],
and the time for doing so has passed. *See* 28 U.S.C. § 636(b) ("Within fourteen days
after being served with a copy, any party may serve and file written objections to
[the magistrate judge's] proposed findings and recommendations as provided by
rules of court."); L.U. Civ. R. 72(a)(3) ("After service of a copy of the magistrate
judge's report and recommendations, each party has fourteen days to serve and file
written objections to the report and recommendations.").

## II. DISCUSSION

Where no party has objected to a magistrate judge's report and
recommendation, the Court need not conduct a de novo review of it. 28 U.S.C.
§ 636(b)(1) ("A judge of the court shall make a de novo determination of those
portions of the report or specified proposed findings or recommendations to which
objection is made."). In such cases, the Court applies the "clearly erroneous, abuse
of discretion and contrary to law" standard of review. *United States v. Wilson*, 864
F.2d 1219, 1221 (5th Cir. 1989).

Here, "[t]he court must determine 'by a preponderance of the evidence'
whether 'the defendant is presently suffering from a mental disease or defect
rendering him mentally incompetent to the extent that he is unable to understand

the nature and consequences of the proceedings against him or to assist properly in his defense.'" *United States v. Porter*, 907 F.3d 374, 380 (5th Cir. 2018) (quoting 18 U.S.C. § 4241(d)).   "To be deemed competent, the defendant must have the present ability to consult with his lawyer with a reasonable degree of rational understanding and have a rational as well as factual understanding of the proceeding against him." *United States v. Simpson*, 645 F.3d 300, 306 (5th Cir. 2011) (quotation omitted).   A court can consider several factors in evaluating competency, including, but not limited to:

> (1) its own observations of the defendant's demeanor and behavior;
> (2) medical testimony; and
> (3) the observations of other individuals that have interacted with the defendant.

*See id.*

Having conducted the required review under § 636(b)(1), the Court concludes that the Magistrate Judge's findings are not clearly erroneous, nor are they an abuse of discretion or contrary to law.   *See Wilson*, 864 F.2d at 1221.   The Magistrate Judge thoroughly reviewed the record and heard testimony from Dr. Teater supporting the conclusion that Defendant had schizophrenia and a neurocognitive disorder that would diminish his ability to testify and assist his lawyer with his defense.   *See* R. & R. [37] at 10–13.   While Defendant generally understood how a trial works and the roles of judges, jurors, and prosecutors— presumably because of his lessons during the competency restoration program at FMC Devens, *see* Ex. [30] at 11 (under seal)—his delusions and cognitive impairments, including memory loss and inability to focus on a conversation

9

without discussing Anthony Ellis, presently render him unable to make intelligent decisions about his defense and communicate effectively with his lawyer.   *See Simpson*, 645 F.3d at 306.

Accordingly, the Court finds that Defendant is not competent to stand trial, is subject to the provisions of 18 U.S.C. § 4246, and should be committed for examination and preparation of a § 4246 certification. 18 U.S.C. § 4241(d).   Section 4246 provides:

> (a) **Institution of proceeding**.—If the director of a facility in which a person is hospitalized certifies that a person in the custody of the Bureau of Prisons whose sentence is about to expire, or who has been committed to the custody of the Attorney General pursuant to section 4241(d), or against whom all criminal charges have been dismissed solely for reasons related to the mental condition of the person, is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined. . . . The court shall order a hearing to determine whether the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another. . . .
>
> (b) **Psychiatric or psychological examination and report.**—Prior to the date of the hearing, the court may order that a psychiatric or psychological examination of the defendant be conducted, and that a psychiatric or psychological report be filed with the court, pursuant to the provisions of section 4247(b) and (c).

§ 4246(a)–(b).

The Court agrees with the Magistrate Judge's recommended course of action, *see* R. & R. [37] at 14–15, and will adopt his recommendations.

III.   <u>CONCLUSION</u>

The Court will adopt the Magistrate Judge's Report and Recommendation [37] as the opinion of this Court.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Report and Recommendation [37] of United States Magistrate Judge Bradley W. Rath, entered in this case on March 7, 2024, is **ADOPTED** in its entirety as the finding of this Court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that,

1. Defendant be committed for purposes of examination and preparation of a § 4246 report/certification at an appropriate facility designated by the Federal Bureau of Prisons.
2. Pursuant to 18 U.S.C. § 4247(c), a psychological report shall be prepared and filed with the Court, with copies provided to counsel for the person examined and counsel for the government, and shall include:
    a. the defendant's history and present symptoms;
    b. a description of the psychiatric, psychological, and medical tests employed and their results;
    c. the examiner's finding from each test applied; and
    d. the examiner's opinions as to diagnosis and prognosis, including:
        i. whether the defendant is suffering from a mental disease or defect, as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another.
3. The time from Defendant's competency hearing until such time the issue of the defendant's dangerousness is fully resolved by the Court shall be hereby excluded under the Speedy Trial Act, 18 U.S.C. §§ 3161(h)(1)(A) and 3161(h)(7).

**SO ORDERED AND ADJUDGED**, this the 12th day of April, 2024.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

11